IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) LYNDEL L. HICKEY; (2) OLIVIA HICKEY; (3) LYNDEL W. HICKEY; and (4) DAKOTA ADVERTISING, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> (1) O'CONNOR & DREW, P.C.; <br> (2) DAVID A. DIIULIS, CPA; <br> (3) LAUREN A. CARNES, CPA; and <br> (4) HARRY E. SALERNO, CPA, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Case Number CIV-09-349-C |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed the present action on March 31, 2009, alleging a variety of professional malpractice claims against an accounting firm and three individual employees of the firm. Defendants filed a motion to dismiss or transfer.

### BACKGROUND

Plaintiffs hired Defendant O'Connor (the firm) in 1991 to provide accounting services for them and a car dealership that they owned. According to Plaintiffs, the firm holds itself out nationwide as having special expertise in providing accounting services to automobile dealerships. They contend that the relationship between the parties began when Mr. Tubbs, an automobile dealer in Texas, told Defendant Salerno that Plaintiffs would be a good business prospect. After discussions between the parties, which Plaintiffs claim were

instigated by Defendant Salerno, Plaintiffs hired the firm, which then provided accounting services for them until some point in 2007.[1]

Plaintiffs contend that, between 1991 and 2002, the firm's employees traveled to Oklahoma at least once a year to gather information to properly prepare Plaintiffs' tax returns.[2] When Plaintiffs' tax returns were audited, it appears that at least some of the audits were conducted by IRS agents in Oklahoma. The appeals were then later handled by IRS agents in Massachusetts. Plaintiffs contend that, in 2007, they became aware of deficiencies in Defendants' preparation of their tax returns. After unsuccessfully attempting to resolve their dispute without resorting to litigation, the firm filed a declaratory judgment action in Massachusetts state court on November 5, 2008, seeking a judicial determination of whether the accountants committed professional malpractice in handling Plaintiffs' tax returns. Plaintiffs then filed the present complaint on March 31, 2009. Defendants served Plaintiffs with the Massachusetts action on April 6 and 7, 2009.[3] Plaintiffs served Defendants with the

---

[1] Defendants do not dispute the involvement of Mr. Tubbs. They contend, however, that the initial contact between the parties "was not a true 'cold call' or solicitation situation," and that in any event, Plaintiffs intentionally retained Defendants' services and never expressed any concern about using the services of a Massachusetts accounting firm. (See Defs.' Resp., Dkt. No. 27 at 2.)

[2] Defendants dispute this assertion, contending that Defendants DiIulis and Salerno traveled to Oklahoma a few times between 1991 and 1996, and that Defendant Carnes never traveled to Oklahoma in connection with Plaintiffs' tax returns.

[3] Defendants contend that Plaintiffs were aware that the Massachusetts action had been filed, even though service had not been effected, because they had informed Plaintiffs' attorneys of the suit and asked whether they were willing to accept service on Plaintiffs' behalf.

present complaint on April 17, 2009.[4] Plaintiffs then removed the Massachusetts case to federal district court on May 7, 2009, where it is still pending.

Defendants contend that the present action should be dismissed because jurisdiction first attached to the Massachusetts case and that proceeding with both cases would constitute a waste of judicial time and resources. Should the Court find that the first-to-file rule does not require dismissal, however, Defendants argue that dismissal would still be proper under the Colorado River[5] abstention doctrine. Defendants also urge that principles of comity favor permitting the Massachusetts federal court to pass on the issues before proceeding with the present case. In the alternative, Defendants argue that the present action should be transferred to the Massachusetts federal court pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

**A.   Dismissal of the Present Action**

    **1.   First-to-File Rule**

It is recognized that "where the jurisdiction of a federal district court has first attached, that right cannot be arrested or taken away by proceedings in another federal district court." O'Hare Int'l Bank v. Lambert, 459 F.2d 328, 331 (10th Cir. 1972). Instead,

---

[4] According to Plaintiffs, they sent certified copies of the present complaint, together with summons, addressee restricted, to the firm and certain of its principals on April 1, 2009. On April 6, 2009, Joan A. Kilnapp, an employee of the firm, signed for the summons. Therefore, they contend that the firm had notice of the present action on April 6, 2009, before they effected service of the Massachusetts action. Plaintiffs contend that, in an effort to be thorough, they also sent service to Defendants' counsel, which was effectuated on April 17, 2009.

[5] Colo. River Water Conservation Dist. v. United States, 424 U.S. 800 (1976).

second courts "should decline consideration of the action until the proceedings before the first court are terminated." Cessna Aircraft Co. v. Brown, 348 F.2d 689, 692 (10th Cir. 1965). This rule is not absolute, however. According to the Tenth Circuit, in the context of a declaratory judgment action, "[a] district court may decline to follow the first-to-file rule and dismiss a declaratory judgment action if that action was filed for the purpose of anticipating a trial of the same issues in a court of coordinate jurisdiction."[6] Buzas Baseball, Inc. v. Bd. of Regents of Univ. Sys. of Ga., No. 98-4098, 1999 WL 682883, at *3 (10th Cir. Sept. 2, 1999).

      Here, Defendants filed a declaratory judgment action in Massachusetts state court before Plaintiffs filed the present federal complaint. Therefore, if the Court applies the first-to-file rule, the present action should be dismissed. However, in their response to Plaintiff's motion to dismiss the Massachusetts case, Defendants state that "O'Connor filed the initial complaint and continued good-faith negotiations with the Hickeys, intending both to avoid litigation if at all possible and to attempt to secure the convenience of a Massachusetts forum if litigation was required." (See Pls.' Resp., Dkt. No. 23, Ex. 2 at 3.) Additionally, it is clear that Defendants did not serve Plaintiffs in the Massachusetts case until after Plaintiffs filed the present complaint. It appears, therefore, that Defendants filed the Massachusetts case in anticipation of Plaintiffs filing a separate lawsuit, and the Court concludes that it may

---

[6] Massachusetts federal courts also follow the first-to-file rule, and similarly counsel that anticipatory litigation should be discouraged. See TPM Holdings, Inc. v. Intra-Gold Indus., Inc., 91 F.3d 1, 4 (1st Cir. 1996); Lexington Ins. Co. v. City of Phoenix, Ariz., CIV.A. No. 96-10319-WGY, 1996 WL 463672, at *2-3 (D. Mass. July 31, 1996).

disregard the first-to-file rule in the present circumstances.[7] Accordingly, dismissal of the present complaint is not necessary on this basis.

### 2. **Colorado River Abstention**

Defendants contend that dismissal is also proper under the abstention doctrine articulated by the Supreme Court in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). It is well established that abstention is only proper in a small minority of cases. New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 359 (1989). Congress defines the extent of federal judicial jurisdiction,[8] and "[w]hen a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction." Willcox v. Consol. Gas Co. of N.Y., 212 U.S. 19, 40 (1909). Whenever there is parallel state court litigation, the Colorado River doctrine mandates that a federal court may abstain from exercising jurisdiction only in "exceptional circumstances."[9]

---

[7] This conclusion is bolstered by correspondence between counsel for the parties submitted by Defendants. In three separate communications, Defendants' counsel states that if Plaintiffs wish to pursue litigation, they request that Plaintiffs' attorneys accept service of the Massachusetts action on their behalf. It appears that service of the Massachusetts action was important to Defendants only if Plaintiffs intended to pursue separate litigation.

[8] U.S. Const. art. III, § 1; Kline v. Burke Constr. Co., 260 U.S. 226, 233-34 (1922) (noting that Congress "may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution").

[9] In Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976), the Supreme Court examined how federal courts should proceed when faced with a situation where they shared concurrent jurisdiction with state courts. Due to the "virtually unflagging obligation" of federal courts to hear cases within their jurisdiction, the Court noted that "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances

This argument must fail, however, because there is no longer parallel state court litigation pending. On May 7, 2009, Plaintiffs removed the Massachusetts state court case to the Massachusetts federal district court. Accordingly, the Colorado River abstention doctrine has no applicability to the present case. While it is well-established that permitting two separate cases involving the same parties and issues to proceed before two different federal courts "leads to . . . wastefulness of time, energy and money," Continental Grain Co. v. The FBL-585, 364 U.S. 19, 26 (1960), this situation is instead more appropriately addressed by determining whether the Massachusetts federal court is a more convenient forum pursuant to 28 U.S.C. § 1404(a) (see infra Part B). Therefore, dismissal is not warranted on this basis.

### 3. Principles of Comity

Defendants also contend that the Court should dismiss the present complaint in favor of the Massachusetts federal district court action on the basis of comity. As Defendants note, comity means "that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter." Rhines v. Weber, 544 U.S. 269, 274 (2005) (internal quotation marks and citations omitted). Issues of comity generally arise in situations where there are simultaneous federal and state or tribal proceedings pending or when federal courts consider whether to give effect to a state or international court order.

---

appropriate for abstention. The former circumstances, though exceptional, do nevertheless exist." Id. at 818.

See O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Kerr-McGee Corp. v. Farley, 115 F.3d 1498 (10th Cir. 1997); Matter of Colo. Corp., 531 F.2d 463 (10th Cir. 1976). The Court has found no authority, nor have Defendants provided any, indicating that notions of comity would favor dismissal in the present situation where simultaneous federal actions are pending in different districts. The issue is more properly dealt with by considering whether the Massachusetts district court is a more convenient forum according to 28 U.S.C. § 1404(a) (see infra Part B), and accordingly Defendants are not entitled to dismissal on this basis.

**B.    Transfer of the Present Action Under 28 U.S.C. § 1404(a)**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The burden rests on the movant to demonstrate that the current forum is inconvenient, and "unless the evidence and the circumstances of the case are strongly in favor of the transfer the plaintiff's choice of forum should not be disturbed." Tex. Gulf Sulphur Co. v. Ritter, 371 F.2d 145, 147 (10th Cir. 1967); see also Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991). District courts have broad discretion to determine whether transfer is appropriate, and they should consider the following factors in making their determination:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all

> other considerations of a practical nature that make a trial easy, expeditious and economical.

Tex. Gulf, 371 F.2d at 147.

After considering and weighing the above factors, the Court finds that transfer is not warranted at this time. Plaintiffs chose to bring their lawsuit in Oklahoma and, contrary to Defendants' assertions, this factor is entitled to great weight because there are significant contacts with the state of Oklahoma. Plaintiffs reside in Oklahoma, it appears that their business was, at least in part, solicited by Defendants in Oklahoma, and Defendants made many trips to Oklahoma in order to conduct business with Plaintiffs. (See Pls.' Resp., Dkt. No. 23, Ex. 4; Defs.' Reply, Dkt. No. 27, Ex. 1.) The Court finds such contact is sufficient to entitle Plaintiffs' choice of forum to significant weight. See ROC, Inc. v. Progress Drillers, Inc., 481 F.Supp. 147, 151 (W.D. Okla. 1979).

With respect to the second factor, the Court finds that it is neutral, and therefore does not support transfer. Although not expressed with much specificity, it appears that many of Defendants' witnesses are located in Massachusetts, including the accountants and the IRS employees who handled portions of Plaintiffs' audits. (See Defs.' Mot., Dkt. No. 20, Ex. 6.) However, Plaintiffs are all located in Oklahoma.[10] Additionally, they attached letters written

---

[10] Plaintiffs further argue that it would be extremely difficult, if not impossible, for Plaintiff Lyndel L. Hickey to travel to Massachusetts to attend trial or depositions due to his serious health condition. Defendants contend that, if his health condition is so serious, then it would be equally difficult for him to travel from Sayre to Oklahoma City and therefore his testimony would be taken by video deposition. The Court finds this argument unpersuasive. "Defendant's arguments that it may be difficult or impossible for Plaintiff to appear for deposition or trial, or to obtain the necessary witnesses at trial is a little self-serving. It is Plaintiff's choice to make, not Defendant's to make for her. And Plaintiff has the right to choose." Ruckman v. Life Ins. Co. of N. Am., No. 2:07-CV-

8

by Defendant Carnes to an IRS employee located in Oklahoma, indicating that other portions of the audits were actually handled here in Oklahoma. (See Pls.' Resp., Dkt. No. 23, Ex. 4 at 11-17.) Additionally, although Defendants assert that the documents necessary to defend Plaintiffs' claims are all located in Massachusetts, Plaintiffs contend that all of their records are located in Oklahoma. Further, Plaintiffs assert that one of their claims concerns Defendants' failure to properly maintain records, and they contend that they have recreated those documents from their files and that, consequently, they are located in Oklahoma.

The next factor addressed by the parties is the enforceability of a judgment, should one be obtained. Defendant Carnes submitted an affidavit stating that Defendants do not have any assets in the State of Oklahoma that could be attached should a judgment be rendered against them. (See Defs.' Mot., Dkt. No. 20, Ex. 6.) Accordingly, this factor appears to weigh in favor of transfer.

Defendants next raise the question of potential conflict of laws issues and the advantage of having a local court determine questions of local law. Defendants assert that Massachusetts law would apply to the present dispute and that a Massachusetts jury should determine whether Defendants violated the community standards and accepted practices for licensed Massachusetts accountants. Plaintiffs contend, however, that Oklahoma law would apply to the present action and that, because Defendants prepared Oklahoma state tax returns, their conduct should be assessed, at least in part, in relation to Oklahoma's standard of care

---

0474-RLH-LRL, 2007 WL 4218968, at * 2 (D. Nev. Nov. 29, 2007); see also 15 Charles Alan Wright, et al., Federal Practice and Procedure § 3849 (3d ed. 2007).

regarding the preparation of state tax returns. Based upon a cursory examination of Oklahoma's choice of law analysis, it appears that Oklahoma law would likely govern the present dispute. Should Massachusetts law instead govern, this Court is prepared to accurately apply such principles. Additionally, the fact that Defendants prepared Oklahoma state tax returns weighs against transferring the present action to Massachusetts.

Based on the Court's consideration of the above factors, Defendants have not met their burden of demonstrating that the current forum is inconvenient. "Merely shifting the inconvenience from one side to the other . . . obviously is not a permissible justification for a change of venue." Scheidt v. Klein, 956 F.2d 963, 966 (10th Cir. 1992). Accordingly, the Court finds that, for the convenience of the parties and witnesses, it is inappropriate to transfer the present action to the United States District Court for the District of Massachusetts.

Therefore, Defendants' Motion to Dismiss or in the Alternative Motion to Transfer (Dkt. No. 20) is DENIED.

IT IS SO ORDERED this 10th day of July, 2009.

*[signature]*
ROBIN J. CAUTHRON
United States District Judge